MORGAN, LEWIS & BOCKIUS LLP
Brian D. Fahy, Bar No. 266750
brian.fahy@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA  90071-3132
Tel:   +1.213.612.2500
Fax:   +1.213.612.2501

MORGAN, LEWIS & BOCKIUS LLP
J.P. Schreiber, Bar No. 317829
jp.schreiber@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA  94105
Tel:   +1.415.442.1000
Fax:   +1.415.442.1001

Attorneys for Defendants
GUCCI AMERICA, INC. and
KERING EYEWEAR USA, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRES SENDIS, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GUCCI AMERICA, INC., a corporation; KERING EYEWEAR USA, INC., a corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 5:24-cv-1069<br>[Riverside County Superior Court, Case No. CVRI2401710]<br><br>**DEFENDANTS' NOTICE OF REMOVAL TO FEDERAL COURT**<br><br>**[28 U.S.C. §§ 1332, 1441, 1446]** |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 48066682.2

DEFENDANTS' NOTICE OF REMOVAL
TO FEDERAL COURT
[28 U.S.C. §§ 1332, 1441, 1446]

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendants Gucci America, Inc. ("Gucci") and Kering Eyewear USA, Inc. ("Kering Eyewear") (together, "Defendants"), by and through their counsel, remove the above-entitled action to this Court from the Superior Court of the State of California for the County of Riverside, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, because minimal diversity exists and the amount in controversy exceeds $5 million. Defendants will provide additional evidence to support the allegations of this pleading as required in the event a challenge is raised to the Court's jurisdiction.

This removal is based on the following grounds:

## I.     <u>PROCEDURAL BACKGROUND</u>

1.     On March 29, 2024, Plaintiff Andres Sendis ("Plaintiff") filed an unverified putative class action complaint against Defendants in the Superior Court of the State of California for the County of Riverside, in the matter entitled *ANDRES SENDIS, individually, and on behalf of all others similarly situated vs. GUCCI AMERICA, INC., a corporation; KERING EYEWEAR USA, INC., a corporation, and DOES 1 through 10, inclusive*, Case No. CVRI2401710, a true and correct copy of which is attached as **<u>Exhibit A</u>** ("Complaint").

2.     On April 19, 2024, Plaintiff personally served the registered agents for Gucci and Kering Eyewear with the Complaint. True and correct copies of the Proofs of Service of Summons are attached hereto as **<u>Exhibit B</u>**.

3.     Defendants are informed and believe, and on that basis allege, that none of the other fictitiously-named defendants have been identified by Plaintiff or served with the Summons and Complaint.

4.     All other documents and orders filed in the state court action are attached hereto as **<u>Exhibit C</u>**. Exhibits A-C constitute all of the pleadings, process,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 48066682.2

2

DEFENDANTS' NOTICE OF REMOVAL
TO FEDERAL COURT
[28 U.S.C. §§ 1332, 1441, 1446]

1    and orders served upon Gucci or filed in the Superior Court action.

2        5.    In the Complaint, Plaintiff asserts claims on behalf of the following

3    putative class:

> All persons who worked for any Defendant in California
> as an hourly-paid or non-exempt employee at any time
> during the period beginning four years and 178 days[1]
> before the filing of the initial complaint in this action and
> ending when notice to the Class is sent.

7    Complaint ¶ 25.

8        6.    On behalf of himself and the putative class, Plaintiff asserts causes of

9    action for: (1) failure to pay minimum and straight time wages (California Labor

10   Code sections 204, 1194, 1194.2, and 1197); (2) failure to pay overtime wages

11   (California Labor Code sections 1194 and 1198); (3) failure to provide lawful meal

12   periods (California Labor Code sections 226.7 and 512); (4) failure to provide

13   lawful rest periods (California Labor Code section 226.7); (5) failure to timely pay

14   final wages at termination (California Labor Code section 201-203); (6) failure to

15   furnish accurate itemized wage statements (California Labor Code section 226); (7)

16   failure to reimburse expenses (California Labor Code section 2802); (8) unfair

17   competition (Business & Professions Code section 17200, *et seq.*); and *See*

18   *generally,* Complaint.

19       7.    Plaintiff is an employee of Gucci.  He is not, and has never been, an

20   employee of Kering Eyewear.  Thus, Defendants calculated the amount in

21   controversy based on Plaintiff's class definition as it applies to Gucci employees, as

22   set forth below.  Kering Eyewear denies that it employed or jointly employed

23   Plaintiff or any other Gucci employees, that it violated any laws respecting them, or

---

[1] Plaintiff alleges that "[i] in response to the COVID-19 pandemic, the Judicial Council of California adopted Emergency Rule 9(a) (California Rules of Court), whereby "statutes of limitations and repose for civil causes of action that exceed I 80 days are tolled from April 6, 2020 to October 1, 2020."  Complaint ¶ 25, n. 1. Defendants do not concede that Emergency Rule 9(a) applies to this action, but are including it in this removal calculations for the sole purpose of determining how much Plaintiff's allegations have placed in controversy.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 48066682.2

3

DEFENDANTS' NOTICE OF REMOVAL
TO FEDERAL COURT
[28 U.S.C. §§ 1332, 1441, 1446]

that Plaintiff is entitled to any relief.  Defendants reserve the right to provide additional calculations if Plaintiff's theories change.

## II.   REMOVAL IS TIMELY.

8.   Plaintiff served the Summons and Complaint on the registered agents for Defendants on April 19, 2024.  Because this Notice of Removal is filed within thirty days of service of the Summons and Complaint, it is timely under 28 U.S.C. §§ 1446(b) and 1453.  *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc*., 526 U.S. 344, 354 (1999) (explaining that the 30-day period for removal runs from the service of the summons and complaint).

9.   Defendants' 30-day removal deadline is extended to May 20, 2024, as the last day of the period to remove otherwise would have fallen on Sunday, May 19, 2024, and Fed. R. Civ. P. 6 extends the deadline to the following "day that is not a Saturday, Sunday, or legal holiday."  *See, e.g., Pogosyan v. U.S. Bank Tr. Nat'l Ass'n*, No. CV1507085ABRAOX, 2015 WL 12696188, at *2 (C.D. Cal. Oct. 22, 2015) (applying Fed. R. Civ. P. 6 to find that removal was timely because the deadline extended to the following day that was not a Saturday, Sunday, or legal holiday); *Washington v. Reliance Standard Life Ins. Co.*, No. LACV2001771JAKMRWX, 2020 WL 13561595, at *1 (C.D. Cal. Apr. 16, 2020) (finding removal timely and reasoning that "[b]ecause the last day of the period for the Removal Notice fell on Sunday, February 23, 2020, the Removal Notice was timely filed in this federal court on Monday, February 24, 2020").

10.   No previous Notice of Removal has been filed or made with this Court for the relief sought herein.

## III.   THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT.

11.   This lawsuit is a putative class action.[2]  Removal based on the Class

---

[2] Defendants deny and reserve the right to contest at the appropriate time, that this action can properly proceed as a class action.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES
DB2/ 48066682.2
4
DEFENDANTS' NOTICE OF REMOVAL TO FEDERAL COURT
[28 U.S.C. §§ 1332, 1441, 1446]

Action Fairness Act ("CAFA") is proper pursuant to 28 U.S.C. §§ 1441, 1446, and 1453 because: (i) diversity of citizenship exists between at least one putative class member and Defendants; (ii) the aggregate number of putative class members in the proposed class is 100 or greater; and (iii) the Complaint places in controversy more than $5 million, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2), (d)(5)(b), 1453. Although Defendants deny Plaintiff's factual allegations and deny that Plaintiff—or the class he purports to represent—is entitled to the relief requested in the Complaint, based on Plaintiff's allegations in the Complaint and Prayer of Relief, all requirements for jurisdiction under CAFA have been met in this case.

### A. Diversity of Citizenship Exists.

12.     To establish CAFA's diversity requirement, a removing party seeking removal must establish only that minimal diversity exists, that is, that one putative class member is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2); *see also*, *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (finding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)).

13.     The citizenship of fictitious "Doe" defendants should be disregarded for removal purposes. 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded."); *see also*, *Soliman v. Philip Morris*, Inc., 311 F.3d 966, 971 (9th Cir. 2002) ("The citizenship of fictitious defendants is disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant."); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998) (holding that for removal purposes, the citizenship of defendants sued under fictitious names shall be disregarded).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 48066682.2

5

DEFENDANTS' NOTICE OF REMOVAL
TO FEDERAL COURT
[28 U.S.C. §§ 1332, 1441, 1446]

1

**1.    Plaintiff is a Citizen of California.**

14.    "An individual is a citizen of the state in which he is domiciled . . . ." *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)).  For purposes of diversity of citizenship jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed.  *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).  Domicile is determined by "an individual's 1) residence in a state, and 2) his intent to remain indefinitely."  *Boon*, 229 F. Supp. 2d at 1019.  Evidence of continuing residence creates a presumption of domicile.  *Washington v. Hovensa LLC*, 652 F.3d 340, 395 (3d Cir. 2011); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519 (10th Cir. 1994).

15.    In his Complaint, Plaintiff alleges that he "is a California resident who worked for Defendants in Riverside County, California as an hourly-paid, non-exempt employee from approximately April 2023 to present.  Complaint ¶ 7.  Business records of Gucci reflect that Plaintiff's last known home address on file is in the State of California.  The Complaint does not allege any alternative place of residence or state of citizenship for Plaintiff.  *See generally,* Complaint.  Accordingly, Defendants allege that Plaintiff is, and was at the time of filing of the Complaint, a citizen of California for diversity jurisdiction purposes.  *See Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1227 (9th Cir. 2019) ("A party's allegation of minimal diversity may be based on 'information and belief.'").

**2.    Gucci America, Inc. is a Citizen of New York**

16.    Pursuant to 28 U.S.C. § 1332, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."  28 U.S.C. § 1332(c)(1).  A corporation's "principal place of business" is where its "officers direct, control, and coordinate the corporation's activities . . . [I]n practice it should

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 48066682.2

6

DEFENDANTS' NOTICE OF REMOVAL TO FEDERAL COURT
[28 U.S.C. §§ 1332, 1441, 1446]

normally be the place where the corporation maintains its headquarters-provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meeting[.]" *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

17.    Defendant Gucci America, Inc. is a corporation organized under the laws of the State of New York.  Its principal place of business and corporate headquarters is in New York, New York, where its officers direct, control, and coordinate corporate activities.  Thus, Defendant Gucci is a citizen of New York. 28 U.S.C. § 1332(c)(1).

### 3.    Kering Eyewear USA, Inc. is a Citizen of Delaware and New Jersey.

18.    Defendant Kering Eyewear USA, Inc. is a corporation organized under the laws of Delaware.  Its headquarters are in Bridgewater, New Jersey, where its officers direct, coordinate, and control its business operations.  Thus, Defendant Kering Eyewear is a citizen of Delaware and New Jersey.  28 U.S.C. § 1332(d)(10).

### B.    The Putative Class Has More Than 100 Members.

19.    CAFA's requirement that proposed class membership be no less than 100 (28 U.S.C. § 1332(d)(5)) is satisfied here because the putative class has more than 100 members.  Plaintiff seeks to represent "All persons who worked for any Defendant in California as an hourly-paid or non-exempt employee at any time during the period beginning four years and 178 days before the filing of the initial complaint in this action and ending when notice to the Class is sent."  Complaint ¶ 25.

20.    Plaintiff is an employee of Gucci.  He is not, and has never been, an employee of Kering Eyewear.  Thus, Defendants calculated the amount in controversy based on Plaintiff's class definition as it applies to Gucci employees, as set forth below.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 48066682.2

7

DEFENDANTS' NOTICE OF REMOVAL
TO FEDERAL COURT
[28 U.S.C. §§ 1332, 1441, 1446]

21.     Based on records available to Gucci, Gucci is informed and believes that Gucci has employed at least 665 individuals who worked as hourly, non-exempt employees in California since October 4, 2019 (the start of the alleged class period) through the present.  Thus, the putative class contains more than 100 members.

**C.     The Amount in Controversy Exceeds $5,000,000.[3]**

22.     Pursuant to CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds $5,000,000, exclusive of interest and costs.  28 U.S.C. § 1332(d)(6).  When a plaintiff does not expressly plead a specific amount of damages, a removing party need only show that it is more likely than not that the amount in controversy exceeds $5 million.  *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997).

23.     A removing defendant "must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'"  *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014) (quoting 28 U.S.C. § 1446(a)).  The short and plain statement "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Id.* at 89.  It is beyond dispute that "a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements."  *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019)

---

[3] This Notice of Removal addresses the nature and amount of damages that the Complaint places in controversy.  Defendants refer to specific damages estimates and cites to comparable cases solely to establish that the amount in controversy exceeds the jurisdictional minimum.  Defendants maintain that each of Plaintiff's claims lack merit and that Defendants are not liable to Plaintiff or any putative class member in any amount whatsoever.  No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or could actually recover any damages based upon the allegations contained in the Complaint or otherwise.  "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Defendants'] liability."  *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).  In addition, Defendants deny that this case is suitable for class treatment.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 48066682.2

8

DEFENDANTS' NOTICE OF REMOVAL
TO FEDERAL COURT
[28 U.S.C. §§ 1332, 1441, 1446]

1  (internal citations omitted); *see also Dart Cherokee*, 574 U.S. at 84 (holding that a

2  "statement 'short and plain' need not contain evidentiary submissions"); *Jauregui v.*

3  *Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022) (reversing

4  district court's order remanding the action to state court due to an 'inappropriate

5  demand of certitude from [the defendant] over its assumptions used in calculating

6  the amount in controversy' for purposes of CAFA removal).

7        24.    The ultimate inquiry is what amount the complaint places "in

8  controversy," not what a defendant may actually owe in damages.  *LaCross v.*

9  *Knight Transp. Inc*., 775 F.3d 1200, 1202 (9th Cir. 2015) (citation omitted)

10  (explaining that courts are directed "to first look to the complaint in determining the

11  amount in controversy"); *see also Jauregui*, 28 F.4th at 993 ("At that stage of the

12  litigation, the defendant is being asked to use the plaintiff's complaint-much of

13  which it presumably disagrees with-to estimate an amount in controversy.  This is

14  also at a stage of the litigation before any of the disputes over key facts have been

15  resolved.").  The burden to establish the jurisdictional amount under CAFA "is not

16  'daunting,' as courts recognize that under this standard, a removing defendant is not

17  obligated to 'research, state and prove the plaintiff's claims for damages.'"  *Korn v.*

18  *Polo Ralph Lauren Corp*., 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008); *see also*

19  *LaCross*, 775 F.3d at 1203 (rejecting plaintiff's argument for remand based on the

20  contention that the class may not be able to prove all amounts claimed: "Plaintiffs

21  are conflating the amount in controversy with the amount of damages ultimately

22  recoverable."); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir.

23  2015) (in alleging the amount in controversy, defendants "are not stipulating to

24  damages suffered, but only estimating the damages in controversy.").

25        25.    The allegations in the removing defendant's notice of removal "may

26  rely on 'a chain of reasoning that includes assumptions' and 'an assumption may be

27  reasonable if it is founded on the allegations of the complaint.'"  *Marano v. Liberty*

28  *Mut. Grp., Inc*., 2021 WL 129930, at *2 (C.D. Cal. Jan. 14, 2021) (quoting *Arias*,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 48066682.2

9

DEFENDANTS' NOTICE OF REMOVAL
TO FEDERAL COURT
[28 U.S.C. §§ 1332, 1441, 1446]

936 F.3d at 925 (9th Cir. 2019)).  Moreover, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5 million either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief or declaratory relief)."  Senate Judiciary Report, S. REP. 109-14, at 42.  As the United States Supreme Court has advised, "no antiremoval presumption attends cases invoking CAFA" because Congress intended to "facilitate adjudication of certain class actions in federal court."  *Dart Cherokee*, 574 U.S. at 87.

26.     In assessing the amount in controversy, a court must "assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint."  *Campbell v. Vitran Exp., Inc*., 471 F. App'x. 646, 648 (9th Cir. March 8, 2012) (*citing Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)).  When the complaint is "lacking in factual detail," a defendant seeking removal is particularly "justified in employing reasonable estimates" to establish the amount in controversy.  *Ritenour v. Carrington Mortg. Servs., LLC*, 228 F. Supp. 3d 1025, 1029 (C.D. Cal. 2017); *see also Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007) (denying remand where defendant applied reasonable assumptions to complaint that had no fact-specific allegations because a plaintiff seeking to avoid removal "could have alleged facts specific to her claims which would narrow the scope of the putative class or damages sought").

27.     Although Defendants deny Plaintiff's factual allegations and deny that he—or the putative class he seeks to represent—is entitled to the relief for which Plaintiff has prayed, Plaintiff's allegations and prayer for relief have more likely than not put into controversy an amount that exceeds the $5 million threshold when aggregating the claims of the putative class members as set forth in 28 U.S.C. § 1332(d)(6).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 48066682.2

10

DEFENDANTS' NOTICE OF REMOVAL
TO FEDERAL COURT
[28 U.S.C. §§ 1332, 1441, 1446]

1    **1.    Plaintiff's Second Cause of Action for Failure to Pay**

2    **Overtime Places At Least $1,887,086.25 in Controversy.**

3    28.    Plaintiff's Second Cause of Action seeks to recover unpaid overtime

4    on behalf of himself and the putative class.  Plaintiff alleges Defendants

5    "maintained a systematic, ***company-wide policy and practice*** of" "(a) failing to pay

6    employees for all hours worked, including all…overtime wages…."  Complaint, ¶

7    4. (a) (emphasis added); *see also* Complaint, ¶ 15 (alleging a policy and practice of

8    not paying for all hours worked, including overtime wages).  Plaintiff further

9    alleges that "[a]t all times relevant hereto, Plaintiff and the Class have worked ***more***

10   ***than eight hours in a workday*** and/or more than forty (40) hours in a workweek, as

11   employees of Defendants."  Complaint ¶ 15 (emphasis added).  Plaintiff alleges that

12   Defendants "typically scheduled Plaintiff to work at least five days in a workweek

13   and at least eight hours per day," and that Plaintiff "***regularly worked more than***

14   ***eight hours in a workday*** and more than forty (40) hours in a workweek."

15   Complaint ¶ 15 (emphasis added).

16   29.    In further support of this allegation, Plaintiff alleges that "Defendants

17   required Plaintiff and the Class to work 'off-the-clock,' uncompensated, by, for

18   example, required Plaintiff and the Class to continue working before clocking in for

19   the workday, during unpaid meal periods, and after clocking out for the workday."

20   Complaint ¶ 15.  Plaintiff then alleges that "[s]ome" of the above-referenced "off-

21   the-clock" work performed by Plaintiff and the putative class "should have been

22   paid at the overtime rate."  Complaint ¶ 15.  Accordingly, Plaintiff alleges that

23   "Defendants failed to pay Plaintiff and the Class overtime compensation for the

24   hours they have worked in excess of the maximum hours permissible by law."

25   Complaint ¶ 46.[4]

26   _____

27   [4] Furthermore, Plaintiff alleges that "Defendants wrongfully failed to include non-
     discretionary bonuses, commissions, incentive pay, production pay, performance

28   pay, and/or shift differentials in the calculation of Plaintiff's and the other Class
     Members' regular rate of pay used to calculate their overtime rate for the payment

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 48066682.2

11

DEFENDANTS' NOTICE OF REMOVAL
TO FEDERAL COURT
[28 U.S.C. §§ 1332, 1441, 1446]

30.     Labor Code Section 1194(a) provides: "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than . . . the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this . . . overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."  These are the damages that Plaintiff seeks in the Complaint.  Complaint ¶ 49.

31.     Plaintiff also alleges that Defendants' purported failure to pay straight and overtime wages constitutes unfair competition within the meaning of the UCL.  Complaint ¶¶ 84-85.  Therefore, the applicable statute of limitations for this cause of action is four years.  Bus. & Prof. Code § 17208 ("Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued."); *Cortez v. Purolator Air Filtration Prods. Co.,* 23 Cal. 4th 163, 178-179 (2000) (noting the four-year statute of limitations applies to any UCL claim, notwithstanding that the underlying claims have shorter statutes of limitation).

32.     Based on data available to Gucci, the average shift length for putative class members during the alleged class period is approximately eight hours.  Based on this, as well as Plaintiff's allegations described above, which allege that Plaintiff was typically scheduled to work forty hours per week but "regularly" worked over eight hours in a day or forty hours in a week due to working off the clock before his shift, after his shift, or during unpaid meal periods—all of which would necessarily be overtime hours— in addition to Plaintiffs' allegation that Defendants had a "policy and practice" to not pay overtime (*see id.*, ¶¶ 4, 15), Defendants conservatively estimate that Plaintiff seeks to recover one hour of unpaid overtime per week for alleged off-the-clock work.  Complaint ¶ 15; *see Mortley v. Express Pipe & Supply Co.*, No. SACV 17-1938-JLS-JDE, 2018 WL 708115, at *4 (C.D.

of overtime wages."  Complaint ¶ 16.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 48066682.2

12

DEFENDANTS' NOTICE OF REMOVAL
TO FEDERAL COURT
[28 U.S.C. §§ 1332, 1441, 1446]

Cal. Feb. 5, 2018) ("The Court agrees with the courts in this circuit that have concluded that an assumption of one hour of overtime per week is reasonable when a plaintiff alleges a pattern or practice of violation."); *Hess v. Valero Servs., Inc.*, No. 23-CV-04578-WLH-SK, 2023 WL 5401505, at *3 (C.D. Cal. Aug. 22, 2023) (finding assumption of one hour of unpaid overtime per week "reasonable" in light of allegations that the employer had a "pattern and practice of failing to pay overtime wages"); *Mariscal v. Arizona Tile, LLC*, No. 820CV02071JLSKES, 2021 WL 1400892, at *5 (C.D. Cal. Apr. 14, 2021) (emphasizing the allegation that the employer engaged in a "pattern and practice" of failing to pay overtime and concluding that the "assumption that each putative class member worked one hour of unpaid overtime per workweek is reasonable"); *Kastler v. Oh My Green, Inc.,* No. 19-cv-02411- HSG, 2019 WL 5536198, at *4 (N.D. Cal. Oct. 25, 2019) (assuming one hour of unpaid overtime per week per class member "is a conservative estimate routinely endorsed by courts in evaluating CAFA's amount in controversy requirement when plaintiff fails to include specific allegations" and simply alleged a "pattern and practice" of failing to pay overtime and minimum wages).

33. Here, as noted above, Plaintiff makes specific allegations that "[t]hroughout the statutory period, ***Defendants maintained a policy of practice*** of not paying Plaintiff and the Class for all hours worked, including minimum, straight time, and overtime wages." Complaint ¶ 15 (emphasis added). Given these allegations, it is reasonable to estimate that Plaintiff, on behalf of the putative class, is seeking one hour of overtime per week per class member for alleged off the clock work.

34. Gucci is informed and believes, based on records available to Gucci, that the putative class members have worked at least 59,907.5 workweeks during the alleged four-year statute of limitations, plus 178 days due to tolling of the statute of limitations, and that their average pay rate is $21.00. Thus, Defendants'

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 48066682.2

13

DEFENDANTS' NOTICE OF REMOVAL
TO FEDERAL COURT
[28 U.S.C. §§ 1332, 1441, 1446]

conservative calculation of the amount in controversy for unpaid overtime wages is **$1,887,086.25** [(59,907.5 workweeks) x ($21.00 per hour x 1.5)].  *See Ray v. Wells Fargo Bank, N.A.*, 2011 WL 1790123, at *7 (C.D. Cal. May 9, 2011) (allegation of "consistent overtime work" justified defendant's assumption that each class member was entitled to one hour of overtime per week).

> ## 2. Plaintiff's Third Cause of Action for Failure to Provide Lawful Meal Periods Places At Least $1,258,055.40 in Controversy.

35.     Plaintiff's Third Cause of Action is based on his allegation that "Defendants regularly, but not always, required Plaintiff and the Class to work in excess of five consecutive hours a day without providing a 30-minute, uninterrupted, and duty-free meal period for every five hours of work, or without compensating Plaintiff and the Class for meal periods that were not provided by the end of the fifth hour of work or tenth hour of work."  Complaint ¶ 17.  Specifically, Plaintiff alleges that "Defendants continued to assert control over Plaintiff and the Class by requiring, pressuring, or encouraging them to perform work tasks which could not be completed without working in lieu of taking mandatory meal periods, or by denying Plaintiff and the Class permission to take a meal period."  *Id*. Plaintiff concludes that Defendants had a "***policy and practice***. . . not to provide meal periods to Plaintiff and the Class in compliance with California law."  *Id*. (emphasis added).

36.     Plaintiff also alleges that Defendants' purported failure to provide meal breaks constitutes unfair competition within the meaning of the UCL. Complaint ¶¶ 86.  Therefore, the applicable statute of limitations for Plaintiff's Third Cause of Action is four years.  Bus. & Prof. Code § 17208; *Cortez,* 23 Cal. at 178-179 (noting the four-year statute of limitations applies to any UCL claim, notwithstanding that the underlying claims have shorter statutes of limitation).

37.     Plaintiff seeks to recover "paid one hour of additional wages for each

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 48066682.2

14

DEFENDANTS' NOTICE OF REMOVAL
TO FEDERAL COURT
[28 U.S.C. §§ 1332, 1441, 1446]

workday he or she was not provided with all required meal period(s), plus interest thereon." Complaint ¶ 54.

38.     Based on Plaintiff's allegation that Defendants "regularly, but not always, required Plaintiff and the Class to work in excess of five consecutive hours a day without providing a 30-minute, uninterrupted, and duty-free meal period for every five hours of work," Defendants may reasonably assume that under Plaintiff's theory the Complaint alleges a 20% violation rate for meal period claims when calculating the amount placed in controversy as to this class claim. *See, e.g., Mendoza v. Savage Servs. Corp.*, No. No. 219CV00122RGKMAA, 2019 WL 1260629, at *2 (C.D. Cal. Mar. 19, 2019) (holding that "courts in [the Central District] routinely apply a 20% violation rate—that is, one missed meal and rest period per work week—for meal and rest period premiums"); *Mortley v. ExpressPipe & Supply Co.*, No. 817CV01938, 2018 WL 708115, at *4 (C.D. Cal. Feb. 5, 2018) (finding defendants assumption that class members missed two meal periods and two rest periods each per week based on allegations of "a company-wide policy and/or practice of understaffing" was reasonable); *Stanley v. Distribution Alts., Inc.*, No. EDCV172173AG (KKX), 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (accepting assumed violation rates of "three missed rest breaks, and three missed meal breaks per week" where the complaint offered no guidance as to the frequency of the alleged violations); *Alvarez v. Office Depot, Inc.*, No. CV177220PSGAFMX, 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (finding 60% violation rate reasonable where the complaint "alleges a uniform practice of meal and rest period violations."); *Byrd v. Masonite Corp.*, No. EDCV1635JGB (KKX), 2016 WL 2593912, at *5 (C.D. Cal. May 5, 2016) (court found defendant's assumption that each putative class member missed one meal break and one rest period per workweek based on policy and practice allegations reasonable).

39.     Gucci is informed and believes, based on records available to Gucci,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 48066682.2

15

DEFENDANTS' NOTICE OF REMOVAL
TO FEDERAL COURT
[28 U.S.C. §§ 1332, 1441, 1446]

that the putative class members worked at least 299,537 meal period eligible shifts, i.e., shifts in excess of five hours, during the four-year statute of limitations.  The average hourly rate of pay for class members during this period was $21.00.  Defendants therefore calculate the amount in controversy for Plaintiff's meal period claim as **$1,258,055.40** [(299,537 shifts x 0.20) x $21.00], which is based on one hour of claimed meal period premium pay per week, i.e., one meal period violation per week.

### 3. Plaintiff's Fourth Cause of Action for Failure to Provide Lawful Rest Periods Places At Least $1,258,055.40 in Controversy.

40.     Plaintiff's Fourth Cause of Action is based on his allegation that "Defendants regularly required Plaintiff and the Class to work in excess of four consecutive hours a day without Defendants authorizing and permitting them to take a 10-minute, uninterrupted, duty-free rest period for every four hours of work (or major fraction of four hours), or without compensating Plaintiff and the Class for rest periods that were not authorized or permitted."  Complaint ¶ 18.  Specifically, Plaintiff alleges that "Defendants continued to assert control over Plaintiff and the Class by requiring, pressuring, or encouraging them to perform work tasks which could not be completed without working in lieu of taking mandatory rest periods, or by denying Plaintiff and the Class permission to take a rest period."  *Id*.  Thus, Plaintiff asserts that "Defendants' ***policy and practice*** was to ***not authorize and permit*** Plaintiff and the Class to take rest periods in compliance with California law."  *Id*. (emphasis added).  Based on this, Plaintiff claims that "Plaintiff and the Class are entitled to be paid one hour of premium wages rate for each workday he or she was not provided with all required rest break(s), plus interest thereon."  Complaint ¶ 58.

41.     Because Plaintiff also alleges that the failure to authorize rest periods constitutes unfair competition within the meaning of the UCL (Complaint ¶ 87), the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 48066682.2

16

DEFENDANTS' NOTICE OF REMOVAL
TO FEDERAL COURT
[28 U.S.C. §§ 1332, 1441, 1446]

1  applicable statute of limitations for Plaintiff's rest break claim is four years.  Bus. &

2  Prof. Code § 17208.

3       42.   Gucci is informed and believes, based on records available to Gucci,

4  that the putative class members worked at least 299,537 shifts of more than three

5  and one-half hours during the four-year statute of limitations.  Based on Plaintiff's

6  allegations above, Defendants may reasonably assume that under Plaintiff's theory

7  the Complaint alleges a 20% violation rate for rest period claims when calculating

8  the amount placed in controversy as to this class claim.  *See, e.g.,* Mendoza, 2019

9  WL 1260629, at *2 (holding that "courts in [the Central District] routinely apply a

10  20% violation rate—that is, one missed meal and rest period per work week—for

11  meal and rest period premiums"); *Mortley*, 2018 WL 708115, at *4 (finding

12  defendants assumption that class members missed two meal periods and two rest

13  periods each per week based on allegations of "a company-wide policy and/or

14  practice of understaffing" was reasonable); *Stanley*, No. EDCV172173AG (KKX),

15  2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (accepting assumed violation

16  rates of "three missed rest breaks, and three missed meal breaks per week" where

17  the complaint offered no guidance as to the frequency of the alleged violations);

18  *Alvarez v. Office Depot, Inc.*, No. CV177220PSGAFMX, 2017 WL 5952181, at *3

19  (C.D. Cal. Nov. 30, 2017) (finding 60% violation rate reasonable where the

20  complaint "alleges a uniform practice of meal and rest period violations."); *Byrd v.

21  Masonite Corp.*, No. EDCV1635JGB (KKX), 2016 WL 2593912, at *5 (C.D. Cal.

22  May 5, 2016) (court found defendant's assumption that each putative class member

23  missed one meal break and one rest period per workweek based on policy and

24  practice allegations reasonable).

25       43.   The average hourly rate of during this period was $21.00.  Defendants

26  therefore calculate the amount in controversy for Plaintiff's rest period claim as

27  **$1,258,055.40** [(299,537 shifts x 0.2) x $21.00], which is based on one hour of

28  claimed rest break premium pay per week, i.e., one rest break violation per week.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 48066682.2

17

DEFENDANTS' NOTICE OF REMOVAL
TO FEDERAL COURT
[28 U.S.C. §§ 1332, 1441, 1446]

**4.     Plaintiff's Claim for Waiting Time Penalties Places At Least $1,431,360 in Controversy.**

44.     In support of his claims for waiting time penalties under Plaintiff's Fifth Cause of Action, Plaintiff alleges "Defendants willfully failed and refused to timely pay Plaintiff and the Class all final wages due at their termination of employment."  Complaint ¶ 19.  Plaintiff further alleges that "Defendants' failure to timely pay Plaintiff's final wages when his employment terminated was not a single, isolated incident, but was instead consistent with Defendants' policy and practice that applied to Plaintiff and the Class."  *Id*.  Accordingly, Plaintiff alleges that "[t]he Class is entitled to recover from Defendants their additionally accruing wages for each day they were not paid, at their regular hourly rate of pay, up to thirty (30) days maximum pursuant to California Labor Code § 203."  Complaint ¶ 64.

45.     Section 203 penalties "accrue not only on the days that the employee might have worked, but also on nonworkdays," for up to 30 days, and the accrual of these penalties "has nothing to do with the number of days an employee works during the month."  *Mamika v. Barca*, 68 Cal. App. 4th 487, 492-93 (1998).  As the "targeted wrong" addressed by Section 203 is "the delay in payment" of wages, that wrong "continues so long as payment is not made"; therefore, "[a] proper reading of section 203 mandates a penalty equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days."  *Id*. at 493.

46.     Based on available records, Gucci is informed and believes there are at least 284 putative class members whose employment has terminated in the three years before the filing of the Complaint.  Therefore, Defendants' conservative calculation of the amount in controversy for waiting time penalties is **$1,431,360** [(284 terminated class members) x ($21.00 hourly rate) x (8 hours per day) x (30 days)].  This is a reasonable assumption because Plaintiff expressly alleges that ""[t]he Class is entitled to recover from Defendants their additionally accruing

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 48066682.2

18

DEFENDANTS' NOTICE OF REMOVAL
TO FEDERAL COURT
[28 U.S.C. §§ 1332, 1441, 1446]

wages for each day they were not paid, at their regular hourly rate of pay, up to thirty (30) days maximum pursuant to California Labor Code § 203."  Complaint ¶ 64.  Further, Plaintiff contends that Defendants owe penalties because of their alleged "policy and practice" to require work off-the-clock and failure to provide meal and rest periods.  Complaint ¶¶ 15, 17-19.  It is therefore reasonable to calculate the amount in controversy for waiting time penalties based on a 30-day penalty calculated at each former employee's daily wage rate.  *See Quintana v. Claire's Stores, Inc.*, 2013 WL 1736671, at *6 (N.D. Cal. Apr. 22, 2013) (finding that the defendants' waiting time penalties calculation was "supported by Plaintiffs' allegations" and was "a reasonable estimate of the potential value of the claims" where the complaint alleged that the defendants "'regularly required'" putative class members to work off-the-clock without compensation, and the defendants estimated that each putative class member "potentially suffered at least one violation that continues to be unpaid"); *Stevenson v. Dollar Tree Stores, Inc.*, 2011 WL 4928753, at *4 (E.D. Cal. Oct. 17, 2011) (finding it reasonable for the defendant to assume, in light of the allegations in the complaint that members of the putative class "'routinely'" missed meal periods, that "all members of the proposed class . . . would have missed a meal period as described in the complaint at least once and were thus entitled to the waiting time penalty").

> **5.**     **Plaintiff's Sixth Cause of Action for Failure to Provide Accurate Itemized Wage Statements Places At Least $810,800 in Controversy.**

47.     Plaintiff alleges that Defendants "failed to furnish Plaintiff and the Class with accurate, itemized wage statements showing all applicable hourly rates, all overtime hourly rates, and all gross and net wages earned (including correct hours worked, correct wages for meal periods that were not provided in accordance with California law, and correct wages for rest periods that were not authorized and permitted to take in accordance with California law)."  Complaint ¶ 20.  Plaintiff

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 48066682.2

19

DEFENDANTS' NOTICE OF REMOVAL
TO FEDERAL COURT
[28 U.S.C. §§ 1332, 1441, 1446]

1   additionally alleges that "intentionally and willfully failed to provide employees

2   with complete and accurate wage statements."  Complaint ¶ 68.  Thus, Plaintiff

3   alleges that "Plaintiff and the Class are entitled to recover from Defendants the

4   greater of their actual damages caused by Defendants' failure to comply with

5   California Labor Code § 226(a), or an aggregate penalty not exceeding four

6   thousand dollars ($4,000) per employee."  Complaint ¶ 72.

7          48.    Based on Plaintiff's allegations regarding the frequency of unpaid

8   work time and meal/rest period violations, Defendants may reasonably assume that

9   the Complaint alleges a 100% violation rate for wage statement claims when

10   calculating the amount placed in controversy.  Indeed, courts have found an

11   assumed 100% violation rate for wage statement claims reasonable based on similar

12   allegations.  *See, e.g., Parsittie v. Schneider Logistics, Inc.*, 2019 WL 6792807, at

13   *6 (C.D. Cal. Aug. 13, 2019) (concluding that "it is reasonable to assume a 100%

14   violation rate" for the plaintiff's wage statement claim based on the allegation that

15   "at all relevant times during the applicable limitations period, [the defendants] had a

16   polic[y] and practice[ ] of failing to pay non-exempt employees for all hours

17   worked."); *Cortez v. United Nat. Foods, Inc.*, 2019 WL 955001, at *5 (N.D. Cal.

18   Feb. 27, 2019) ("The allegations here directly support Defendants' use of a 100%

19   violation rate, given that Plaintiff alleges that all employees received defective

20   statements."); *Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403, at *9 (C.D.

21   Cal. May 9, 2018) (holding 100% violation rate reasonable where plaintiff alleged

22   in her complaint "that at all relevant times" the defendants maintained a "policy and

23   practice of issuing [inaccurate] wage statements"); *Mejia*, 2015 WL 2452755, at *5

24   (C.D. Cal. May 21, 2015) ("It is not unreasonable to assume that, with this many

25   violations alleged, every one of the wage statements issued during the class period

26   could potentially have been noncompliant. In addition, and aside from the various

27   allegations, if Defendant had a uniform policy of failing to provide rest periods, as

28   discussed above, the wage statements that Defendant provided would necessarily

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 48066682.2

20

DEFENDANTS' NOTICE OF REMOVAL
TO FEDERAL COURT
[28 U.S.C. §§ 1332, 1441, 1446]

have been inaccurate 100% of the time because each wage statement would have failed to include compensation for the missed rest break.").

49.     Gucci is informed and believes that, during the relevant one-year statute of limitations period, Gucci provided wage statements to putative class members on a biweekly basis.  During the period of March 29, 2023 to the present, Gucci issued approximately 8,299 wage statements to 382 putative class members.  Thus, Plaintiff's cause of action for failure to provide accurate wage statements places at least **$810,800** in controversy [(382 employees during the applicable limitations period x $50 penalty for initial pay period = $19,100.00) + (7,917 subsequent pay periods x $100 penalty = $791,700), equaling total claimed statutory penalties of $810,800].

**6.      Plaintiff's Seventh Cause of Action for Failure to Reimburse Expenses Places At Least $299,520 in Controversy.**

50.     Plaintiff's Seventh Cause of Action is based on his allegation that "Defendants have wrongfully required Plaintiff and the Class to pay expenses that they incurred in direct discharge of their duties for Defendants."  Complaint ¶ 21.  Specifically, Plaintiff alleges that "Plaintiff and the Class regularly paid out-of-pocket for necessary employment-related expenses, including, without limitation, of usage of personal cell phone."  *Id*.  Thus, Plaintiff alleges that "Plaintiff and the Class were damaged at least in the amounts of the expenses they paid, or which were deducted by Defendants from their wages."  Complaint ¶ 77.

51.     Plaintiff also alleges that Defendants' purported failure to reimburse employees, constitutes unfair competition within the meaning of the UCL (Complaint ¶¶ 88), and therefore the applicable statute of limitations for Plaintiff's expense reimbursement claim is four years.  Bus. & Prof. Code § 17208 ("Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued."); *Cortez*, 23 Cal. at 178-179 (noting the four-year statute of limitations applies to any UCL claim,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 48066682.2

21

DEFENDANTS' NOTICE OF REMOVAL
TO FEDERAL COURT
[28 U.S.C. §§ 1332, 1441, 1446]

1  notwithstanding that the underlying claims have shorter statutes of limitation).

2       52.    Gucci is informed and believes that during the four years and 178 days

3  preceding the filing of the Complaint, the putative class members have worked at

4  least 14,976 months.  Defendants' conservative calculation of the amount in

5  controversy for unpaid expense reimbursements is therefore **$299,520** [(14,976

6  months) x $20], which is based on the assumption of a $20 per month cell phone

7  reimbursement amount.  *See Shachno v. Marriott Int'l, Inc.,* 2023 WL 316367, at

8  *11–12 (S.D. Cal. Jan. 19, 2023) (accepting assumption of $20 cell phone

9  reimbursement once per month based on allegations that class members used their

10  phones over the course of their employment); *Vallejo v. Sterigenics U.S., LLC,*

11  2021 WL 2685348, at *6 (S.D. Cal. June 29, 2021) (finding only one violation

12  necessary to impose assumption of $25 monthly fee); *Cavada v. Inter-Cont'l Hotels

13  Grp., Inc.,* 2019 WL 5677846, at *7 (S.D. Cal. Nov. 1, 2019) (accepting

14  assumption of $20 cell phone reimbursement per month per employee where class

15  members alleged used phones to clock in and out each day); *Castro v. ABM Indus.,

16  Inc.,* 2017 WL 4682816, at *4-5 (N.D. Cal. Oct. 19, 2017) (allegations of

17  "regularly", "common" practices, support assumption that plaintiffs incurred at

18  least one reimbursable cell phone expense for each month worked using cost of

19  $27.14/month.).

20       **7.    Total Amount in Controversy Before Attorneys' Fees**

21       Before considering Plaintiff's claim for attorneys' fees, which are also

22  included in the alleged amount in controversy as set forth below, Plaintiff's

23  underlying claims have placed the following amounts in controversy:

| Claim | Amount in Controversy |
| --- | --- |
| Unpaid Overtime | $1,887,086.25 |
| Meal Break Violations | $1,258,055.40 |
| Rest Break Violations | $1,258,055.40 |
| Waiting Time Penalties | $1,431,360 |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 48066682.2

22

DEFENDANTS' NOTICE OF REMOVAL
TO FEDERAL COURT
[28 U.S.C. §§ 1332, 1441, 1446]

| Wage Statement Violations | $810,800 |
|---|---|
| Failure to Reimburse Expenses | $299,520 |
| **Total** | **$6,944,877.05** |

### 8.   Plaintiff's Request for Attorneys' Fees Places Additional Amounts in Controversy, Exceeding the CAFA Threshold.

53.   Plaintiff seeks recovery of attorneys' fees.  *See* Complaint ¶¶ 41, 49, 65, 73, 78; Prayer for Relief.  Attorneys' fees are properly included in determining the amount in controversy.  *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 698 (9th Cir. 2007); *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (holding that "if a plaintiff would be entitled under a contract or statute to future attorney's fees, such fees are at stake in the litigation and should be included in the amount in controversy").  "A defendant does 'not need to prove to a legal certainty' that a plaintiff will be awarded the proffered attorneys' fees in the removal notice."  *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 n.4 (9th Cir. 2020) (quoting *Dart Cherokee*, 574 U.S. at 88).

54.   Defendants deny Plaintiff's claim for attorneys' fees.  However, for purposes of removal, the Ninth Circuit has held that future fee estimates can be based on "customary rates and proper fees," and that "a percentage-based method," such as 25% of the amount in controversy, may also be relevant when estimating the amount of fees included in the amount in controversy.  *Fritsch*, 899 F.3d at 795 and 796, fn. 6.  Courts have used the 25% benchmark to calculate potential fees for purposes of the CAFA amount in controversy.  *See, e.g.*, *Salcido v. Evolution Fresh, Inc.*, 2016 WL 79381, at *8 (C.D. Cal. Jan. 6, 2016); *Oda*, 2015 WL 93335, at *5-6. *Rodriguez v. Cleansource, Inc.*, 2014 WL 3818304, at *4 (S.D. Cal. Aug. 4, 2014) ("[T]he Court finds that using [the 25%] benchmark is the most appropriate way to calculate attorneys' fees in order to establish the amount in

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 48066682.2

23

DEFENDANTS' NOTICE OF REMOVAL
TO FEDERAL COURT
[28 U.S.C. §§ 1332, 1441, 1446]

controversy for jurisdictional purposes."). Indeed, the Central District approved a 33% fee award for Plaintiff's law firm, Wilshire Law Firm, in a wage-and-hour class action. *See Moreno v. Pretium Packaging, L.L.C.*, No. 8:19-CV-02500-SB-DFM, 2021 WL 3673845, at *2 (C.D. Cal. Aug. 6, 2021) (granting final approval of 33% fee award for Plaintiffs' firm Wilshire Law Firm in wage-and-hour class action). Therefore, the inclusion of attorneys' fees at a conservative 25% benchmark would add at least another **$1,736,219.26** to the amount in controversy (25% of $6,944,877.05), bringing the total amount in controversy to at least **$8,681,096.31**.

## IV.   VENUE

55.   This action was originally filed in the California Superior Court for the County of Riverside. Initial venue is therefore proper in this district, pursuant to 28 U.S.C. § 1441(a), because it encompasses the county in which this action has been pending.

## V.   NOTICE

56.   Defendants will promptly serve this Notice of Removal on all parties and will promptly file a copy of this Notice of Removal with the clerk of the state court in which the action is pending, as required under 28 U.S.C. § 1446(d).

57.   Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all "process, pleadings, and orders served" upon Defendants as well as other documents filed in the state court action are filed concurrently with this Notice of Removal as exhibits hereto.

## VI.   CONCLUSION

Based on the foregoing, Defendants request that this action be removed to this Court. If any question arises as to the propriety of the removal of this action, Defendants respectfully request the opportunity to present a brief and oral argument in support of its position that this case is subject to removal.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 48066682.2

24

DEFENDANTS' NOTICE OF REMOVAL
TO FEDERAL COURT
[28 U.S.C. §§ 1332, 1441, 1446]

1    Dated:  May 20, 2024                MORGAN, LEWIS & BOCKIUS LLP

2

3                               By  */s/Brian D. Fahy*

4                                  Brian D. Fahy
                                  J.P. Schreiber

5                                  Attorneys for Defendants
                                  GUCCI AMERICA, INC. and

6                                  KERING EYEWEAR USA, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 48066682.2

25

DEFENDANTS' NOTICE OF REMOVAL
TO FEDERAL COURT
[28 U.S.C. §§ 1332, 1441, 1446]